Good morning, Your Honors. My name is Randy Lowne, and I'm appearing on behalf of the appellant Kenneth Novak. As a preliminary matter, there was an order to show cause which I was served, which asked about some excerpts, and I filed a late response to that order to show cause, and I don't know if the courts received it. No, we don't. My problem is that when my writer left, I have not been able to determine what excerpts specifically you were referring to, and it appears in my records that all the excerpts may have been provided to the district court, but I'm not positive of it. And that's my problem. Well, none of the excerpts of record that you filed in this court appear on the docket of the district court. Correct. So it appears that none of those documents was at least presented by you in the district court. And I don't know how to respond to that. I think you need to explain to us how you can represent by filing an excerpt of record in this court that simply doesn't exist. I can only issue you my abject apologies. I had an individual that was doing brief writing for me, that was doing it from the record which we had created, and if it wasn't filed in the district court, I don't know what happened. I honestly don't. Counsel, I... It's my fault, and I recognize that. Counsel, I believe that those documents were, in fact, attached to something which the government filed. So they are there, as far as I'm concerned, in the state court. And I would think if you had gone back and looked at the record as you should have looked at the record, you would have seen that and you would have said to us something like, I think that even though I didn't file these, the government did, and I think it's appropriate that the court can look at them. And when I went through my brief and looked at the excerpts that are cited in the brief, it did appear that all of them are in the excerpts that were put up by the federal government in response to this court. I'm not sure that's true. But they're in the district court. Some of them. Yeah. I don't know what to say other than it's my error, it was wrong, and I take the hit on that. There's nothing I can do about that. Well, having taken the hit, I just really encourage you in the future to make very, very certain that stuff that's filed in this court is absolutely accurate. I understand that completely, Your Honor. It will not happen again. So with that apology having been made, I do believe that the record that was created in the district court is sufficient for this court to reverse the granite summary judgment, specifically in light of the new case which has come out from the Supreme Court on Gomez-Perez v. Potter, 128th Supreme Court, 1931, a 2008 case. Well, we're very aware of that case. And that has to do with retaliation. But your problem on your retaliation claim may be that there was too long a period of time before the activity before the EEOC and the retaliation. It looks to me like it was about a year. And we very seldom find that to be adequate. And what I would say is that when my client originally filed in the EEO, his first filing was he asked to remain anonymous. There was an extension granted for them to conduct their evaluation of his case. And the activity that's complained about occurred after he went formal, at which time he was no longer anonymous by any means. And that is documented in the record in this case. And ---- Well, what do you think the time gap is? Well, we have him being transferred back on February 29th of 02, I believe. And that should be in document 12-3, page 46, Exhibit M, page 404 of Exhibit M, which has my client's documentation as to when he was transferred back. When you say transferred back, what do you mean? He had been on assignment for approximately eight months to another job. And he was sent back to his original shop. And in the record it shows that he was told by the manager where he was assigned that he had been requested back. When he returned, he was confronted by his supervisor, which was Mr. Van Hoff, Steve Van Hoff, and told that he was sent back due to poor performance. That was his first indication of any problem with his performance. And that was shortly after. And I believe that Judge Gavin in the EEO process found it was within a week of his having gone formal that he was then transferred. What is adverse about the employment action in that there was no change in compensation or the terms and conditions or privileges of his employment? Well, if you look at his statement that is in the excerpt that I just stated, Exhibit M, I think it's document 12-3, page 46, 404, he was also had his hours changed. And his hours changed. In his favor. Well, actually, he was on the early shift. And as is put in his note, he was, by being on the early shift, avoiding heavy commuter traffic to and from work and home. And when he was moved to the formal day shift, 7-20 to 4, I want to say it's 4-20, but I could be off on the hour, that put him in heavy work traffic to and from, which made his commute extensive. So that accounts for an adverse employment action? Well, it's a change in his routine. He'd been on the early shift for over six years when that was done to him. And then it was shortly after that that he was forced to take a test on a new computer CAD program that he had not trained on. And when he didn't pass it, they moved him out to what was essentially a furniture warehouse. And they had him working out there by himself, away from any other contact. And basically, he saw it as being put out to pasture. They knew he was getting up towards retirement age. They wanted him to go. And by sticking him out there where he had no association, no contact with other people, he, in fact, chose to leave. And that was almost, I would consider, constructive discharge. And I believe that is an action. Judge Gavin in the EEO said that was retaliation. He awarded no damages, which is why it went forward to suit. There's no change in his compensation? Originally, his first EEO action that started this process was over not being promoted to GS-11. The non-promotion issue. It's not before us. Right. And then the retaliation was after he filed his EEO. And if he was forced out by being put out to pasture, put out in an area where he had no contact with other employees, where he had nobody there to talk to, work with, being stuck in what was described as a furniture warehouse in the area he was put, he was forced out. And he took an early retirement, which is a significant loss of wages in the long run because he would have worked for a longer period of time at full wage instead of taking a reduced retirement. Okay. You might want to save the rest of your time.  Ms. Midditt. Good morning, Your Honors. Counsel, my name is Jamie Midditt. I'm an assistant United States attorney representing the government in this matter. Your Honors, it goes without saying that employment decisions should be free from discrimination. But in this case, Mr. Novak was not discriminated against. And let me try to clarify his claims here. He has three claims. The first one was that in June of 2001, he didn't get an upgrade from a GS-10 to a GS-11 because of retaliation for EEO activity that he allegedly occurred in 1990. Now, is that issue still before us? That claim, I believe, is before the Court, Your Honor. I didn't know that. And I would say in that particular claim that Mr. Novak absolutely can't make even a prima facie case. That claim has many problems on different levels. First of all, there is absolutely no evidence on the record that his supervisors in 2001 had any indication that he had possibly engaged in EEO activity in 1990, even if you could consider what he did to be EEO activity. And so 10 years is just way, way too long to have any causal connections. So he cannot make a prima facie case. Even if somehow he could, there is absolutely no evidence of pretext. The record is replete with information pertaining to the fact that Mr. Novak was not performing at a GS-11 level. He was having difficulty at the level that he was at a GS-10. There were always favorable evaluations. Yes. When Mr. Van Hoff, his supervisor at the time, had been supervising him for probably a little less than two years, and the system that they had was acceptable, nonacceptable. And he gave him an acceptable rating. But in the evaluations, he pointed out specifically the areas of deficiency and the problems that he had. Clearly, he felt that he wasn't working at a level above the GS-10. And to be promoted, there is no entitlement to a GS-11. You get the GS-11 if you can demonstrate that you're working at a GS-11 grade level. And everybody believed that Mr. Novak was barely working at the GS-10 grade level. He certainly wasn't working at the GS-11. So on that first claim, the government's position is, and I believe the evidence supports, that there is no prima facie case. His next two claims are that he was reassigned in June of 2002 because of his age and because of retaliation. And the retaliation at that time would be for the EEO activity that he had engaged in in August of 2001, when he complained about not getting an upgrade. And again, the government would suggest that on both claims, he cannot make a prima facie case. And even assuming a prima facie case, there's no evidence of pretext. For the age claim, the government would suggest to the Court that the reassignment was not an adverse action. It did not change the terms and conditions of his employment, which has to be for a disparate treatment claim, a reassignment, anything has to change the terms and conditions of your employment, and it did not. Was anybody else ever put off in the warehouse to work alone? Let me explain, Your Honor. Mr. Lyle's characterization is not quite accurate. The record shows when he worked for Mr. Van Hoff before he was reassigned. I couldn't answer that question, yes or no. Well, he wasn't put off by himself. I mean, he was working in the same place that he had been working in. When he was working for Mr. Van Hoff, they were working in the same building, which had been a warehouse and had been converted into office space. He was on the second floor at the time that he was working for the individual who reassigned him. When he was reassigned to the new position in June of 2002, most of his coworkers were located on the fourth floor. At the time when he was sent over there, there was no space on the fourth floor, so they housed him on the third floor. I mean, he has testified in the record there were other people on the third floor. There may not, most of his colleagues in that group were on the fourth floor, but he wasn't isolated, you know, miles away or in the basement or in any place other than the same building that he had been working in. So for the age claim, the terms and conditions of his employment were not affected. And even if the courts find that it was an adverse action, he can't show that similarly situated younger people were treated differently. It was commonplace to reassign people. The record is full of statements from everybody saying the type of job they had, they were reassigned to help out and do different jobs constantly. And Mr. Novak himself had been reassigned many times before. This is summary judgment, is it not? Yes, it is, Your Honor. Are there disputed facts about this? That's all you have to have are material disputed facts. Not every fact that's disputed, you know, is the court as well. Whereas a material fact in a government's position is there were no facts, material facts that if it went to trial would lead to a conclusion that Mr. Novak was retaliated against or discriminated against based on his age. He said his deposition testimony said that he was told he was being put out to pasture. That's why he was moved. Mr. Novak has stated that his supervisor said he was put out to pasture. In the record, the other individual who was present, supposedly according to Mr. Novak, Mr. Goossen, one of his team leaders, was present during that conversation. And Mr. Goossen testified, as did Mr. Van Hoff, that that statement was not said. They didn't recall. But isn't that a material fact dispute? It could be, you know. But an individual's self-serving speculation or testimony, the cases say, is not sufficient to defeat summary judgment. There has to be something more on the record other than Mr. Novak making that comment that's not supported anywhere else. If you put that together for purposes of summary judgment, we have to assume that Novak was telling the truth. If you put that together with his being reassigned apparently to just feed records into archives or something like that and not really do real work and put off into what he claims was an isolated position, when you put all that together, don't you have a material dispute as to some of the facts? I do believe, Your Honor, that it still has to be some support on the record other than Mr. Novak's own testimony that this happened, because then you would never be able to get summary judgment. Somebody can come along and say whatever that's totally not supported. Well, nobody disputes the nature of the work to which he was reassigned. Is that correct? No. He was reassigned. He was still a mechanical engineering technician, and he was reassigned to work that was considered easier and they felt he would have a better chance of excelling at. He's still working in a similar type of work. He's not creating drawings. He's inputting the drawings into the database that all of the mechanical engineering technicians use. So he's still working as a mechanical engineering technician. He's just doing a different type of work. And if you find that it was an adverse action, there is absolutely no evidence on the record of pretext. Everybody has testified, Mr. Van Hoff and all of the team leaders testified that we still have to find that his age and or his reprisal was the reason that they reassigned him. And the evidence on the record is complete with testimony that they reassigned him because he wasn't doing a good job where he was. He wanted to be promoted, and he wasn't going to get promoted where he was because he couldn't do the work. So they looked around to try to find a place where they thought he would excel and he would do well. It wasn't to punish Mr. Novak. It was to try to assist him. And his supervisor has testified that they've done that with other people that have had difficulty doing the particular work of creating drawings. They've transferred them, reassigned them to different areas. And in one or two occasions, the individual excelled where they were and was able to get promoted. And Mr. Van Hoff testified that basically, and not just Mr. Van Hoff, all of the team leaders testified that that was the reason for transferring Mr. Novak was to help him. Was he given a test on a machine which he'd never worked on before? Is that an accurate reflection of the record? No, it's not, Your Honor. And it's really not part of the case. The people are reassigned a lot. All of the people testified that they grew. And when they come back, they have to be brought up to speed again on the program that they're using on the computer. And I believe when Mr. Novak had been reassigned on one other occasion, when he came back, they worked with him to get him up to speed, and then they gave him a nothing to do with this particular reassignment that's at issue. Anyway, I have nothing more, Your Honors. I would ask you to affirm the lower court's decision. But I'd be happy to answer any more questions if you have them. Thank you. I think we're okay. Thank you, Mr. Schmidt, for your argument. Mr. Warren? Just very briefly, the put-out-to-pasture argument is exactly that. My client said he was told that. And having stated that, that's an issue of fact. And it's a very pertinent issue of fact. Because if he was put out to pasture by being moved into this warehouse, away from the other workers, on a different floor, and I think it's described in the record as being a place where they stored the tables and chairs and stuff from other locations, where he was not working with any of the people that he was assigned to work with, he was by himself, that is retaliation. And in fact, we only have to look at Judge Gavin's ruling. Is it discrimination or retaliation? Well, understand that he originally filed a claim of age discrimination, and he believes that is why it initiated. But after he started his age discrimination, he was moved. He filed a second EEO, which was then joined. Yes, but my question is, are you relying on it as discrimination or retaliation or both? Both. And I see my time's up. Please go ahead and answer the question. Yeah, the reason I say both is because he believes that the reason he was put out was because of his age, and that when he filed the EEO complaint against him, that's when they retaliated against him. And that was the reason he got stuck over in this section. And so it involves both issues. And I think there's enough in the record that it should go forward. All right. Counsel, the matter just argued will be submitted, and we'll next hear argument in the fauna.
judges: Fletcher, Rymer, Fisher